Filed 2/10/16  Unmodified opinion attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| AARON LEIDER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>JOHN LEWIS et al.,<br><br>    Defendants and Appellants. | B244414<br><br>(Los Angeles County<br>Super. Ct. No. BC375234)<br><br>**ORDER MODIFYING OPINION**<br>[There is no change in judgment] |

BY THE COURT:

It is ordered that the opinion filed herein on January 14, 2016 is modified as follows:

On pages 1, in counsel listing, delete:

Michael N. Feuer, City Attorney and John A. Carvalho, Deputy City Attorney, for Defendants and Appellants.

Duane Morris and Patricia P. Hollenbeck for Association of Zoos & Aquariums, San Diego Zoo Global, International Elephant Foundation, Phoenix Zoo, North Carolina Zoological Park, Saint Louis Zoo, and Busch Gardens Tampa as Amici Curiae on behalf of Defendants and Appellants.

and replace with:

Michael N. Feuer, City Attorney and John A. Carvalho, Deputy City Attorney; Karcher Harmes PS and Kathryn E. Karcher, for Defendants and Appellants.

Duane Morris, Patricia P. Hollenbeck and Heather U. Guerena, for Association of Zoos & Aquariums, San Diego Zoo Global, International Elephant Foundation, Phoenix Zoo, North Carolina Zoological Park, Saint Louis Zoo, and Busch Gardens Tampa as Amici Curiae on behalf of Defendants and Appellants. There is no change in judgment.

_____

BIGELOW, P. J.                    RUBIN, J.                    FLIER, J.

Filed 1/14/16 Unmodified opinion

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| AARON LEIDER, | B244414 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC375234) |
| v. | |
| JOHN LEWIS et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. John L. Segal, Judge. Affirmed.

Wasserman, Comden & Casselman, David B. Casselman; Esner, Chang & Boyer and Stuart B. Esner for Plaintiff and Appellant.

Sullivan & Crowell, Diane L. McGimsey, Edward E. Johnson, Janet Y. Galeria and Jonathon D. Townsend for Animal Legal Defense Fund as Amicus Curiae on behalf of Plaintiff and Appellant.

Zeynep J. Graves; The Bernheim Law Firm, Steven J. Bernheim and Nazo S. Semerjian for Last Chance for Animals as Amicus Curiae on behalf of Plaintiff and Appellant.

Michael N. Feuer, City Attorney and John A. Carvalho, Deputy City Attorney, for Defendants and Appellants.

Duane Morris and Patricia P. Hollenbeck for Association of Zoos & Aquariums, San Diego Zoo Global, International Elephant Foundation, Phoenix Zoo, North Carolina

Zoological Park, Saint Louis Zoo, and Busch Gardens Tampa as Amici Curiae on behalf of Defendants and Appellants.

_____

**INTRODUCTION**

This case concerns the elephants and the elephant exhibit at the Los Angeles Zoo. In litigation that began in 2007, plaintiffs and taxpayers Aaron Leider and the late Robert Culp sought to enjoin the continued operation of the elephant exhibit. They also fought to prevent the construction of a new, expanded elephant exhibit. According to plaintiffs, the Zoo had engaged in years of egregious abuse and neglect of the elephants in its care. They alleged the new proposed exhibit would not be large enough to ameliorate the problems inherent in keeping elephants in traditional zoo-like enclosures. The plaintiffs asserted the Zoo's conduct violated animal cruelty provisions in the Penal Code, and constituted illegal expenditures of, waste of, or injury to public funds and property. The defendants vigorously disputed the claims. After the grant of defendants' summary judgment motion, a reversal on appeal by this court, an amended complaint, and pretrial motions, the case went to trial.[1] The trial court rejected many of Leider's claims, but issued limited injunctions prohibiting the use of particular forms of inappropriate discipline, requiring the elephants have specific amounts of exercise time, and requiring the rototilling of the soil in the exhibit.

Both sides appeal from the trial court judgment. The defendants challenge a trial court order overruling their demurrer to the first amended complaint. The defendants contend Leider could not base his taxpayer claims on alleged violations of the Penal Code because of the principle that an injunction may not issue to enforce a penal law. They alternatively challenge the injunctions as exceeding the requirements of relevant statutes and regulations governing the care and maintenance of elephants. Leider, on the other

_____

[1] By this time Culp had died and Leider was the sole plaintiff.

2

hand, contends the trial court erred in failing to shut down the elephant exhibit. Leider argues the trial court improperly rejected certain of his claims based on Penal Code violations. He also challenges the trial court conclusion that he failed to establish a justiciable claim for injury to public property under Code of Civil Procedure section 526a, or a claim based on the violation of a federal regulation regarding animal enclosures.

We agree with the trial court that our decision in the first appeal was law of the case of Leider's right to bring a taxpayer action based on violations of certain Penal Code provisions concerning animal abuse. We alternatively conclude that Civil Code section 3369, which prohibits the issuance of an injunction to enforce a penal law does not apply to taxpayer suits. We also conclude that the trial court's injunctions concerning soil maintenance and exercise time were proper, but reject Leider's claims that the trial court erred by otherwise declining to close the elephant exhibit. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2006, in the face of opposition from at least one animal welfare organization to the continued operation or expansion of an elephant exhibit at the Los Angeles Zoo, the mayor of Los Angeles sought an evaluation of the proposed exhibit and whether an elephant exhibit should be continued at the Zoo. After consideration, including public hearings involving the City Council, the City decided to proceed with an expansion and redesign of the elephant exhibit. In 2007, the Zoo had two elephants, one male and one female. At some point that year, the female elephant was sent to a sanctuary. In 2010, the Zoo acquired two female elephants from the San Diego Zoo; the United States Department of Agriculture had previously confiscated the two elephants from an individual in Texas. The Zoo now has three elephants.

The Zoo opened the new elephant exhibit in December 2010. Although the exhibit covers more than six and a half acres, the area available to the elephants is smaller

3

due to structures that prevent the elephants from ranging freely across the entire exhibit, including electrically charged wires that keep the elephants away from certain areas with vegetation.

In 2007, Leider and Culp sued the City of Los Angeles and the director of the Zoo, John Lewis (collectively the City or defendants), in a taxpayer action under Code of Civil Procedure section 526a (section 526a). The complaint sought an injunction closing the existing exhibit and preventing construction of the new one. This is the second appeal in this matter. In the first appeal, the plaintiffs challenged a trial court order granting summary judgment to the City. This court concluded triable issues of fact existed regarding whether defendants had engaged or would engage in illegal expenditures in connection with the elephant exhibit and violation of Penal Code section 596.5.[2] We therefore reversed the summary judgment. (*Culp v. City of Los Angeles* (Sept. 23, 2009, B208520) [nonpub. opn.].)[3]

Following the remittitur, Leider filed an amended complaint seeking injunctive and declaratory relief. In addition to alleging the defendants had engaged in illegal acts under Penal Code section 596.5, the amended complaint contended the defendants' actions or omissions violated Penal Code sections 597 and 597.1, which are additional cruelty to animal statutes. As in the original complaint, the amended complaint alleged that between 1975 and 2006, multiple elephants at the Zoo died prematurely as a result of inadequate space and hard surface conditions, inadequate veterinary care, and mistreatment that included use of a bull hook. The amended complaint alleged the City's

---

[2]    Penal Code section 596.5 renders it a misdemeanor "for any owner or manager of an elephant to engage in abusive behavior towards the elephant, which behavior shall include the discipline of the elephant by any of the following methods: (a) Deprivation of food, water, or rest. [¶] (b) Use of electricity. [¶] (c) Physical punishment resulting in damage, scarring, or breakage of skin. [¶] (d) Insertion of any instrument into any bodily orifice. [¶] (e) Use of [head restraint devices known as] martingales. [¶] (f) Use of block and tackle."

[3]    For ease of reference we will refer to our decision in the first appeal as *Leider I*.

4

actions cost taxpayers "the unnecessary expenditure of millions of dollars." It further alleged the proposed expansion of the elephant exhibit would permit more abuse and waste of taxpayer funds. The amended complaint alleged the proposed expansion and continued operation of the exhibit violated public policies described in California Fish and Game Code sections 1600, 2051, 2052, 2116.5; California Code of Public Resources section 21001; Penal Code section 596.5; and the United States Endangered Species Act of 1973 (16 U.S.C. §§ 1531, 4202).

The City demurred to the first amended complaint. For the first time in the litigation, the City contended Leider could not state a claim under section 526a for injunctive or declaratory relief because the claims challenged alleged violations of the Penal Code. The City based its argument on Civil Code section 3369, which states that "neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or as otherwise provided by law." The City additionally relied on a California Supreme Court case applying Civil Code section 3369 in a taxpayer action, *Nathan H. Schur, Inc. v. City of Santa Monica* (1956) 47 Cal.2d 11 (*Schur*). The City argued the complaint failed to state a cause of action on any theory because the trial court had previously concluded, in connection with the City's motion for summary judgment, that plaintiff's waste claim was not justiciable, and this court's opinion reversing the summary judgment ruling did not disturb the trial court's prior conclusion on the waste theory.

Leider opposed the demurrer. He challenged the applicability of Civil Code section 3369 and *Schur* to his case. Leider further argued the demurrer did not establish the complaint failed to state any cause of action in that it did not address the allegation that the City was illegally expending funds by violating the public policies underlying provisions in the Fish and Game and Public Resources Codes, or the allegation that the City was injuring public property. Leider asserted all theories in the complaint were at large following this court's opinion in the first appeal, including waste and injury. In

5

reply, the City again contended the demurrer resolved all of plaintiffs' claims because they were barred or not justiciable.

The trial court issued a tentative opinion addressing both the City's demurrer and Leider's motion for a preliminary injunction. After a round of supplemental briefing, the trial court overruled the demurrer. The court concluded the amended complaint alleged the City engaged in conduct such as electrical shocking and illegal use of bull hooks. As such, the court determined the amended complaint stated valid causes of action in alleging the City physically abuses its elephants in violation of Penal Code section 596.5. The trial court rejected the Civil Code section 3369 argument as "not open on remand" after our opinion in *Leider I*. In the context of Leider's motion for a preliminary injunction, the trial court considered several additional issues, including the proper analysis of the "injury to property" prong of section 526a. The court denied the motion on the ground that Leider had not demonstrated a probability of prevailing on the merits.

The case proceeded to a bench trial. In a detailed statement of decision, the trial court concluded that while the evidence did not establish definitively how much space an elephant in captivity needs, Leider had proved the ground of the elephant exhibit is hard, not varied or soft, and creates a risk of injury to the elephants' joints, feet, and nails. The court credited evidence establishing that the size of the exhibit contributed to compacted, hard soil as well as to contamination and increased risk of infection from the presence of urine and fecal matter in a small space. The three elephants exhibit "stereotypic behavior" which the court found was strong evidence that, with respect to at least the sole male elephant, the zoo is not meeting his needs. The court further credited evidence showing elephants in captivity inevitably develop foot problems as a result of a lack of exercise. The court concluded the elephants are emotionally and socially deprived due to the limited choices and enrichment activities available to them, and, in the case of the sole male elephant, from living in isolation.

However, the court concluded Leider had not established the City was violating Penal Code section 596.5, which prohibits an elephant owner or manager from engaging

in abusive behavior of the elephant. The court found the evidence did not establish the City's conduct violated Penal Code section 597, nor had Leider presented any evidence or authority that Penal Code section 597, subdivision (b) applied to elephants held captive in a zoo. Although the court noted the elephants are "hardly, as defendants contend, 'thriving,' " it concluded the City's conduct is "not abusive, does not amount to causing suffering, and is not cruel beyond the 'ordinary' circumstances of captivity (which plaintiff does not challenge)." The court found Penal Code section 597.1 does not apply to captive zoo animals.[4] Similarly, the court found the evidence did not establish the elephant exhibit runs afoul of a regulation promulgated the United States Department of Agriculture regarding space for animals in enclosures.[5]

---

[4] Penal Code section 597, subdivision (b) provides in relevant part: "whoever, having the charge or custody of any animal, either as owner or otherwise, subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal, or fails to provide the animal with proper food, drink, or shelter or protection from the weather, or who drives, rides, or otherwise uses the animal when unfit for labor, is, for each offense, guilty of a crime punishable pursuant to subdivision (d)."

Penal Code section 597.1, subdivision (a)(1), provides, in part: "Every owner, driver, or keeper of any animal who permits the animal to be in any building, enclosure, lane, street, square, or lot of any city, county, city and county, or judicial district without proper care and attention is guilty of a misdemeanor. Any peace officer, humane society officer, or animal control officer shall take possession of the stray or abandoned animal and shall provide care and treatment for the animal until the animal is deemed to be in suitable condition to be returned to the owner. When the officer has reasonable grounds to believe that very prompt action is required to protect the health or safety of the animal or the health or safety of others, the officer shall immediately seize the animal and comply with subdivision (f)."

[5] The regulations Leider referenced concern specifications for the "humane handling, care, treatment, and transportation" of certain warm-blooded animals. 9 Code of Federal Regulations section 3.128 states: "Enclosures shall be constructed and maintained so as to provide sufficient space to allow each animal to make normal postural and social adjustments with adequate freedom of movement. Inadequate space may be indicated by evidence of malnutrition, poor condition, debility, stress, or abnormal behavior patterns." The trial court concluded the evidence established the

7

The court further found Leider had not proved the City was engaged in waste within the meaning of section 526a, a theory Leider had asserted "almost as an afterthought." And, although Leider established the elephant exhibit is injuring the three elephants, the court concluded Leider had not provided "any applicable legal standard against which the court could measure or 'test' defendants' injurious (but not abusive) conduct toward the elephants in the Los Angeles Zoo."

Even so, the court concluded an injunction was appropriate to prevent the City from engaging in forms of inappropriate discipline that had been used at the Zoo in the past. Although the City asserted it had discontinued all conduct prohibited by Penal Code section 596.5, the court, after evaluating numerous relevant factors, concluded Leider was entitled to an injunction enjoining the City from using bull hooks or electric shocks on the elephants. The court also found Leider proved a violation of Penal Code section 597t by establishing that soil compaction deprived the elephants of an adequate exercise area, and ordered the City to regularly rototill the soil and provide the elephants one to two hours of daily supervised exercise.[6]

Accordingly, in a final judgment, the court enjoined the defendants from using bull hooks and electric shock in the management, care, and discipline of the elephants at the Los Angeles Zoo. The court further ordered the defendants to exercise the elephants for a total of at least two hours a day, with appropriate breaks for the zoo staff and the elephants, unless weather or emergency conditions make such exercise impracticable. The court ordered defendants to rototill both the soil and the substrate of the elephant

---

elephants have enough space and freedom to make normal adjustments of their posture and social movements.

[6] Penal Code section 597t provides in part: "Every person who keeps an animal confined in an enclosed area shall provide it with an adequate exercise area. If the animal is restricted by a leash, rope, or chain, the leash, rope, or chain shall be affixed in such a manner that it will prevent the animal from becoming entangled or injured and permit the animal's access to adequate shelter, food, and water. Violation of this section constitutes a misdemeanor."

8

exhibit regularly, consistent with the standards and recommendations of two experts whose testimony was adduced at trial.

Both sides timely appealed from the judgment. On appeal, the City challenges the trial court order overruling the demurrer. The City contends Civil Code section 3369 barred Leider's action. The City alternatively argues the trial court erred in issuing the injunctions requiring exercise and rototilling because the terms of the injunction exceed the requirements of Penal Code section 597t and California regulations regarding elephant enclosures and exercise. In his cross-appeal, Leider argues the trial court erred in failing to order the City to close the elephant exhibit under the illegal expenditures prong of section 526a. Leider contends the undisputed facts indicate the City is illegally abusing the elephants under several Penal Code statutes, and closing the exhibit is the only remedy that would address the proven harms. Leider further asserts the trial court erred in finding no violation of Penal Code sections 596.5 or 597, or 9 Code of Federal Regulations section 3.128, and the court erred in concluding Penal Code section 597.1, subdivision (a) did not apply to animals held captive in a zoo. Leider also argues the trial court erred in its interpretation of "injury" under section 526a, which, he asserts, also mandated closure of the elephant exhibit.

**STANDARD OF REVIEW**

We review the trial court's decision to grant or deny an injunction under the abuse of discretion standard. (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390.) However, the evidence must support the trial court's exercise of discretion, and to the extent the trial court resolved disputed factual issues, we apply the substantial evidence standard of review. (*Ibid.*)

To the extent we are required to interpret statutory language, we confront issues of law that are resolved under the rules of statutory interpretation. (*Ciani v. San Diego Trust & Savings Bank* (1991) 233 Cal.App.3d 1604, 1611.) Our primary task when interpreting statutes is to determine the Legislature's intent. "We first examine the words

9

used in the statute and give them a plain and commonsense meaning. If the language is clear and unambiguous, there is no need for construction or for resort to indicators of the Legislature's intent. [Citation.] A statute's literal meaning must be aligned with its purpose. Its meaning may not be determined from a single word or sentence. Instead, the words must be construed in context, and provisions relating to the same subject matter or that are part of the same statutory scheme must be read together and harmonized to the extent possible." (*Harbor Regional Center v. Office of Administrative Hearings* (2012) 210 Cal.App.4th 293, 310-311 (*Harbor Regional*), footnote omitted.)

"We must select a construction that best fits the Legislature's apparent intent; promotes instead of defeats the statute's general purpose; and avoids absurd or unintended consequences. [Citation.] The statute cannot be construed in a way that would make its provisions void or ineffective, especially if that would frustrate the underlying legislative purpose." (*Harbor Regional, supra,* 210 Cal.App.4th at p. 311.)

## DISCUSSION

### A.     The City's Appeal

*1.     Our Holding in <u>Leider I</u> Is Law of the Case that Leider's Action Is Proper*

After our decision in *Leider I*, the City raised a new issue: that under Civil Code section 3369, which prohibits injunctions to enforce penal laws, the entire action was improper. The trial court overruled the City's demurrer on that ground, finding that our decision in *Leider I* was law of the case that taxpayer actions were a proper vehicle for challenging government spending that also violated the criminal law. We now consider the City's contention that the trial court erred.

#### 1.1     General Principles of Law of the Case

Under the law of the case doctrine an appellate court decision stating a rule of law necessary to the decision of the case conclusively establishes that rule and determines the rights of the parties in any later retrial or appeal. (*Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298, 309 (*Yu*).) The doctrine promotes finality and prevents piecemeal

10

litigation of an issue by preventing the relitigation of issues that were already decided. (*Ibid.*)  The rule extends to issues that were *implicitly* determined because they were essential to the prior decision.  (*Ibid.*)

The law of the case doctrine has two limitations:

First, it does not apply to points of law that might have been, but were not, either explicitly or implicitly, decided in the earlier appeal.  (*Yu, supra,* 103 Cal.App.4th at p. 309.)

Second, the doctrine is procedural, not substantive.  It may be disregarded in exceptional circumstances:  (1) when there has been a manifest misapplication of existing principles that results in a substantial injustice, or (2) there has been an intervening or contemporaneous change in the law.[7]  (*Ibid.*)

### 1.2     The *Leider I* Decision

The trial court in *Leider I* had granted summary judgment for the City on the ground that Leider's taxpayer action, which was based on alleged violations of certain animal abuse statutes, presented a non-justiciable issue of public policy concerns that needed to be resolved as part of the political process.  On appeal, Leider argued that once he had raised triable issues of fact that the City's treatment of the elephants violated the Penal Code's animal abuse provisions, he had satisfied the requirements of a taxpayer action.

The City acknowledged that a taxpayer action was proper when challenging "illegal government action," but argued that such an action was not proper where the real issue involved a disagreement over the manner in which the government has exercised its discretion to address a problem.  The City also contended that the Penal Code provisions

---

[7]     We asked for and received supplemental briefing on whether one new decision – *Animal Legal Defense Fund v. California Exposition and State Fairs* (2015) 239 Cal.App.4th 1286 (*ALDF*) – showed that applying law of the case here would constitute a misapplication of existing legal principles and whether it affects the merits of the City's appeal.  Because both issues overlap, we will discuss this new decision separately in section 3. of our DISCUSSION.

that Leider relied on did not provide a legal standard by which its treatment of the elephants could be measured.

We examined the allegations of the complaint, in particular those alleging that the City's treatment of the elephants violated Penal Code section 596.5, which makes it a misdemeanor to abuse elephants by conduct that includes:  the use of electricity; physical punishment that results in damage, scarring, or breaking of skin; and other unspecified conduct.  We first rejected the City's claim that the appeal was moot because the new elephant exhibit would be constructed with privately donated funds.  In doing so, we held that Leider had standing to challenge the City's allegedly abusive conduct because City funds would continue to be used to operate the exhibit in an allegedly illegal manner.  (*Leider I, supra,* slip opn. at p. 3.)  We characterized section 526a as permitting taxpayer actions to challenge the illegal expenditure of public funds, and held that Leider had raised a triable fact issue that the City's treatment of the elephants violated Penal Code section 596.5.  (*Leider I, supra,* slip opn. at pp. 7-8.)  As part of our discussion, we also held that these claims were justiciable because Penal Code section 596.5 provided an adequate legal standard against which the City's alleged conduct could be measured, permitting an injunction enjoining such conduct if it were proven.  (*Id.* at pp. 8-9.)  Such a standard is necessary to ensure that private plaintiffs in section 526a actions "do not trespass into the domain of legislative or executive discretion."  (*Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 160-161.)

### 1.3    The City's New Challenge Was Implicitly Decided Against It In *Leider I*

In its current appeal from the ensuing judgment, the City now contends that the trial court erred in overruling its demurrer to Leider's entire amended complaint based on a new ground:  that under Civil Code section 3369, as interpreted by *Schur, supra,* 47 Cal.2d 11, Leider was barred from seeking injunctive relief to enjoin violations of the Penal Code.  We conclude that this issue was at least implicitly decided in Leider's favor in *Leider I*.  Accordingly unless an exception applies, the law of the case precludes the City from relitigating this issue.

12

The decision in *Yu, supra,* 103 Cal.App.4th 298, illustrates the rule that both "explicit and implicit conclusions of law establish[] the law of the case." (*Id.* at p. 310.) The plaintiffs in *Yu* sued a credit card issuer for unlawful business practices. The first Court of Appeal decision reversed a summary judgment for the bank, rejecting the bank's contention that a leading appellate decision was distinguishable. A second appeal was brought by the plaintiffs after the trial court, on remand, sustained without leave to amend the bank's demurrers to an amended complaint, and, in the second appeal, the bank argued for the first time that the leading appellate decision had been wrongly decided and was trumped by certain privileges.

The *Yu* court refused to consider these new arguments because they were barred by the law of the case. The *Yu* court held that the law of the case exception for issues that were not raised, but could have been, did not apply. Instead, the *Yu* court held that the bank was simply refining its previous arguments. (*Yu, supra,* 103 Cal.App.4th at pp. 311-312.)

As the *Yu* court observed, "[l]itigants are not free to continually reinvent their position on legal issues that have been resolved against them by an appellate court," because it would be absurd to place a party who has chosen not to argue a point on appeal in a better position than one who argued that point and lost. (*Yu, supra,* 103 Cal.App.4th at p. 312.)

In short, the law of the case doctrine is not defeated by simply raising a new argument that is essentially a twist on an earlier unsuccessful argument. With this in mind, we see little difference between *Yu* and the facts of this case. In *Leider I*, the City argued that Leider could not maintain his taxpayer action for Penal Code animal abuse violations because those code sections did not provide a sufficient standard to make his claims justiciable. We rejected that contention, holding that the relevant Penal Code provisions supplied an adequate legal standard by which the City's conduct could be tested. (*Leider I, supra,* slip opn. at p. 9.)

13

In the present appeal, the City contends again that under its new theory Leider may not obtain injunctive relief for conduct that violates Penal Code provisions. We disagree. By deciding that the animal abuse statutes provided a sufficient legal standard to make Leider's taxpayer action justiciable, we also implicitly decided that California law permits section 526a actions based on violations of the Penal Code's animal abuse provisions. In short, the City is simply trying to refine its earlier argument by asserting another reason why taxpayer action are not proper when based on the animal abuse provisions of the Penal Code.

We reject the City's reliance on *Estate of Horman* (1971) 5 Cal.3d 62 (*Horman*), for the proposition that *Leider I* did not implicitly decide the new issue it raises here. In *Horman,* the probate court ordered the distribution of a decedent's estate to non-residents. The State of California appealed, contending, as it had at trial, that the survivors had not sufficiently established their relationship to the decedent. The State prevailed at the retrial, but that judgment was reversed and another trial was held. At the third trial, the State for the first time raised the five-year deadline for asserting claims contained in Probate Code section 1026. The trial court found that the five-year period had been tolled while the previous actions had been pending.

In the final appeal, the Supreme Court rejected the survivors' contention that law of the case barred the State from raising Probate Code section 1026 because the State had not raised the issue during the first and second trials and appeals. The Supreme Court held that the earlier proceedings had reached only the substantive merits of the survivors' claims and therefore had not even implicitly reached the procedural time bar of Probate Code section 1026. (*Horman, supra,* 5 Cal.3d at pp. 73-74.)

We believe *Horman* is distinguishable because the new issue raised there was a procedural bar, while the earlier proceedings focused solely on the merits. In this case, as in *Yu, supra,* 103 Cal.App.4th 298, the new issues raised – whether a taxpayer's action was proper based on violations of the Penal Code's animal abuse provisions – bore an analytically substantive relationship to the issues previously considered. (See also

14

*Greene v. Bank of America* (2015) 236 Cal.App.4th 922, 932 [law of the case did not preclude malicious prosecution defendant from raising new issue of collateral estoppel because earlier proceedings focused solely on the merits of the plaintiff's claims].)

    1.4  <u>Refusing to Apply Civil Code Section 3369 Will Not Create a Substantial Injustice</u>

Even where law of the case would otherwise apply, we may disregard the doctrine if doing so would lead to a substantial injustice by a manifest misapplication of existing legal principles or if there has been an intervening change in the law.

As to the first exception, we assume for discussion's sake that Civil Code section 3369 does bar Leider's action, and that we would have so held had the issue been raised during the first appeal. Even so, we conclude that keeping the trial court's judgment in place by applying the law of the case doctrine to our decision in *Leider I* would not result in a substantial injustice.

Pursuant to the trial court's judgment, the City is barred from using bull hooks, a practice it said it had already stopped, and was ordered to rototill the soil in the elephant exhibit and make sure that the elephants get sufficient exercise. As the case law in this area makes clear, allowing this result to stand, even if in error, is not a substantial injustice.

We begin with *People v. Shuey* (1975) 13 Cal.3d 835 (*Shuey*), where the Court of Appeal issue a writ overturning the denial of defendant's motion to suppress evidence of the marijuana found in his apartment on the ground that an illegal search and seizure occurred when the police occupied his apartment for three hours while a search warrant was obtained. As part of its order, the Court of Appeal held that the prosecutor had waived the issue of whether a valid arrest based on probable cause had occurred. On remand, the trial court held a limited hearing on another issue -- whether the evidence should be suppressed as the fruit of the poisonous tree. The trial court again excluded the evidence.

On appeal by the prosecution, the Supreme Court refused to consider the prosecutor's contention that a valid arrest had occurred. Relying on the law of the case

15

doctrine, the *Shuey* court held that even if the finding of waiver in the first appeal had been in error, the substantial injustice exception to law of the case did not apply: "Yet if the rule is to be other than an empty formalism more must be shown than that a court on a subsequent appeal disagrees with a prior appellate determination. Otherwise the doctrine would lose all vitality and the [law of the case doctrine] would be reduced to a vapid academic exercise, since an unsuccessful petitioner for pretrial writ review could always maintain on subsequent appeal that the prior adjudication resulted in an 'unjust decision.' " (*Shuey, supra,* 13 Cal.3d at p. 846.)

Similarly, the court in *Chase Brass & Copper Co. v. Franchise Tax Board* (1977) 70 Cal.App.3d 457 (*Chase*) held that a previous ruling that erroneously allowed a corporation to underpay its state tax liability was protected from a new challenge to that issue by the law of the case doctrine. Even though the company would pay less tax than it owed, the *Chase* court held that law of the case applied and, albeit without discussion, held that doing so did not demonstrate a manifest misapplication of existing principles resulting in substantial injustice. (*Id.,* at pp. 464-465.)

To reiterate, in *Shuey*, law of the case was invoked to prevent the prosecution from raising an issue that could have defeated a criminal defendant's motion to suppress the key evidence against him. In *Chase,* the doctrine was invoked even though it allowed a corporation to underpay its state income tax. The Courts of Appeal in the final appeals found neither result worked a substantial injustice. Something more than an incorrect decision must be shown.

The City contends that a substantial injustice will result because its employees would risk losing their jury trial and higher burden of proof rights required in a criminal trial. It also argues that, depending on how we rule, it could also lose its $42 million elephant exhibit. As to the latter, our decision leaves the exhibit in place. As to the former, individual defendants are enjoined in their official capacities only. None has been prosecuted, sentenced, or fined. It is also doubtful that the judgment in this civil

16

injunction case could have collateral estoppel effect in any criminal proceeding. (*People v. Superior Court (Lucero)* (1989) 49 Cal.3d 14, 20, fn. 3.)

Otherwise, the City has failed to address whether the judgment as it currently stands will work any substantial injustice if it remains in place. The City must stop a practice (using bull hooks and electric shocks to discipline elephants) that it has disavowed, as well as exercise the elephants and turn the soil in the elephant exhibit. The City does not contend, and we do not believe, that such a limited remedy amounts to a substantial injustice. If anything, our decision tends to promote a just result, at least to the extent it aligns with the prohibitions of the animal abuse statutes and the requirements of federal regulations governing the treatment of elephants. (See 9 C.F.R. § 3.128 [ensuring freedom of movement]; 9 C.F.R. § 3.140 [humane handling procedures for transporting animals].)

This is not a case like *Sefton v. Sefton* (2015) 236 Cal.App.4th 159, where the Court of Appeal refused to apply law of the case because the trial court's distribution of a substantial portion of the trust to one beneficiary was contrary to hundreds of years of rulings and deprived a rightful beneficiary of his share of the estate. (*Id.* at p. 172, fn. 6.) Instead, as previously noted, the City must stop practices (using bull hooks and electric shocks to discipline elephants) that it has already disavowed, turn the soil in the elephant exhibit, and exercise the elephants. Under the authorities just discussed, such a result does not amount to a *substantial* injustice.

### 1.5 There Has Been No Misapplication of Existing Principles Because *Schur* Does Not Apply to Leider's Action

Ultimately, we reject the City's argument that the law of the case is inapplicable because the authorities on which they rely, *Schur* and Civil Code section 3369, do not apply here. We begin by setting forth the relevant provisions of Civil Code section 3369 and Code of Civil Procedure section 526a.

Civil Code section 3369 was enacted by the Legislature in 1872. It provides: "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in

17

any case, nor to enforce a penal law, except in a case of nuisance or as otherwise provided by law."[8]

Section 526a was enacted by the Legislature in 1909. It provides: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen or resident therein, . . . who is liable to pay . . . a tax therein."

Civil Code section 3369's prohibition against injunctive relief where the conduct to be enjoined is criminal is designed to protect the defendant's rights to both a jury trial and the higher burden of proof required in criminal trials. (*People v. Lim* (1941) 18 Cal.2d 872, 880 (*Lim*).) However, section 3369 does not apply where the criminal conduct also amounts to a civil nuisance that affects the complaining party's property rights. (*Id.* at pp. 879-880.)

The court in *Schur, supra,* 47 Cal.2d 11 considered the effect of Civil Code section 3369 on a taxpayer suit brought to stop the City of Santa Monica from issuing amusement licenses for games of skill that the plaintiff contended were in fact games of chance that violated the state's anti-gambling laws. The *Schur* court reversed a judgment for the plaintiff. The *Schur* court framed the issue before it as one to enjoin the city from committing a crime, even though the plaintiff asked that the city be enjoined from spending funds to issue the supposedly illegal licenses. (*Id.* at p. 17) The Supreme Court acknowledged that section 526a allowed taxpayers to obtain injunctions against a city's

---

[8]     Civil Code section 3369 was amended in 1977 to delete specified exemptions for unfair competition actions and insert the exception for actions as "otherwise provided by law." Leider contends this amendment opened the door to taxpayer actions based on Penal Code violations, while the City contends that it referred to the unfair competition laws. On its face, the "as otherwise provided by law" amendment seems to encompass any statutory authorization for injunctive relief. We need not resolve this issue, however, because our interpretation of sections 3369 and 526a is based on the pre-1977 version present in *Schur*.

18

illegal use of funds. However, such relief was not proper where the City exercised its valid quasi-judicial authority to issue licenses following a noticed public hearing attended by the plaintiff, who could seek relief through an administrative mandate action. (*Id.* at pp. 17-18.)

The *Schur* court then discussed *Lim, supra,* 18 Cal.2d 872, and its holding that an action to enjoin someone's operation of an illegal gambling house was not permitted under Civil Code section 3369 because the Legislature had not declared such operations to be public nuisances. The *Schur* court used its discussion of *Lim* as a guideline for the trial court should there be a retrial: "Caution should be observed therefore upon retrial to avoid violating that [*Lim*] rule. It should also be observed that whether licenses are or are not issued the criminal law is still open to Schur." (*Schur, supra,* 47 Cal.2d at pp. 18-19.)

In examining *Schur's* reach, we are guided by the rule that the language used in an opinion must be understood in light of the facts and the issues before the court, and an opinion is not authority for a proposition not actually considered. (*Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 118.) As we read *Schur*, it viewed the action as one to enjoin a crime, not as a taxpayer action to stop the illegal use of funds. Our conclusion is bolstered by the *Schur* court's failure to discuss the meaning of "illegal expenditure" in section 526a, as well as its reliance on *Lim, supra,* 18 Cal.2d 872, which was an action against a private party to enjoin a nuisance, not a taxpayer action.[9]

In fact, as *Lim* itself made clear, an injunction against criminal activity is proper where the Legislature provides for it. (*Lim, supra,* 18 Cal.2d at pp. 880-881.) Section 526a so provides. We begin by examining the statutory purpose behind section 526a. It provides "a general citizen remedy for controlling illegal government activity." (*White v. Davis* (1975) 13 Cal.3d 757, 763.) Its primary purpose is to " 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the

---

[9]     Even the court in *ALDF, supra,* 239 Cal.App.4th 1286, believed that *Schur* stood for no more than the proposition that a taxpayer action based on violation of a criminal statute is not proper where an administrative remedy is available. (*Id.* at p. 1301.)

19

courts because of the standing requirement." (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 267-268 (*Blair*).) It is a remedial provision which must be broadly construed. (*Id.* at p. 268.)

To this end, our courts have endorsed taxpayer actions aimed at stopping unconstitutional police activity. (*White v. Davis, supra,* 13 Cal.3d 757 [illegal covert surveillance activity by police]; *Blair*, *supra,* 5 Cal.3d 258 [challenging use of claim and delivery laws]; *Wirin v. Parker* (1957) 48 Cal.2d 890 [purchase of electronic eavesdropping equipment]; *Wirin v. Horrall* (1948) 85 Cal.App.2d 497 [use of illegal police blockades to search autos].) Closest on point in terms of the relief sought here is *Cornblum v. Board of Supervisors* (1980) 110 Cal.App.3d 976, which allowed a taxpayer's action challenging a county jail's inhumane treatment of prisoners. Not one post-*Schur* decision interpreting section 526a has ever mentioned *Schur* or held that section 526a applies only to illegal acts that are *not* criminal acts.[10]

We next consider the language of section 526a, which permits taxpayer actions against "*any* illegal expenditures." (Italics added.) That phrase is not defined but is surely broad enough to include criminal acts in addition to acts otherwise prohibited by law. (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 763 (*Safeco*).)

At issue in *Safeco* was the enforceability of an insurance policy exclusion for liability resulting from any illegal act. The Supreme Court said that "[t]he phrase 'illegal act' is susceptible of two reasonable meanings." Although the Court of Appeal had used a dictionary definition that construed the term broadly to encompass "any act prohibited by law . . . the term can also be interpreted more narrowly as meaning a violation of criminal law." (*Safeco, supra,* 26 Cal.4th at p. 763.) The court also noted that several thesauruses treat the term "illegal" as synonymous with "criminal." (*Ibid.*)

"Broadly construed, a violation of *any* law, whether civil or criminal, is an illegal act." (*Safeco, supra,* 26 Cal.4th at p. 764, original italics.) Had the insurer "wanted to

---

**10** With one exception: the decision in *ALDF, supra,* 239 Cal.App.4th 1286, which we mentioned in footnote 7, *ante*, was the first to mention *Schur* in connection with section 526a. We asked for and received supplemental briefing from the parties on the applicability of that decision, which we discuss *post*.

exclude criminal acts from coverage, it could have easily done so." (*Id.* at p. 763.) Because it chose not to do so, the Supreme Court could not read into the policy what the insurer had omitted. (*Id.* at pp. 763-764.)

Although *Safeco* concerned the interpretation of an insurance policy under the ordinary rules of contract interpretation, it is instructive here. The primary rule of statutory construction is to ascertain the Legislature's intent by examining the entire statute. In doing so, we look first to the plain meaning of the words used, giving effect to the "usual and ordinary import of those words." (*People v. Salcido* (2008) 166 Cal.App.4th 1303, 1311.) The *Safeco* court tells us that the term "illegal act" is susceptible of two reasonable constructions – a narrow one limited to criminal acts, and a broad one that includes both criminal acts and other forms of unlawful conduct. Given the mandate to broadly construe section 526a (*Blair*, *supra,* 5 Cal.3d at pp. 267-268), it strikes us that the plain meaning of "*any* illegal expenditure" within that statute includes criminal acts.

To hold otherwise would violate another rule of statutory construction – that when interpreting a statute, we may not read into the provision language that does not appear. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 545.) Given the plain and broad meaning of illegal expenditures, we would have to add the following language to prevent its application here: that taxpayers may bring actions to prevent a government's illegal expenditures *except when the illegal conduct is also a criminal act*.

If, as we conclude, section 526a does permit taxpayer actions to enjoin a City's illegal use of funds that also violates a penal law, then one more rule of statutory construction comes into play: when a specific provision and a general provision appear inconsistent, and the general provision standing alone would include the same matter as the specific provision, the specific provision will be considered an exception to the general provision regardless of which was enacted first. (*Stone Street Capital, LLC v. California State Lottery Com.* (2008) 165 Cal.App.4th 109, 119.) With this rule in mind, Civil Code section 3369 and Code of Civil Procedure 526a can be harmonized as follows

21

– while Civil Code section 3369 prohibits injunctive relief to affirmatively enforce a penal law, Code of Civil Procedure section 526a provides an exception for taxpayer actions aimed at stopping government expenditures supporting conduct that is criminal.

Finally, the concerns about enforcing the criminal law through a civil proceeding that animated the decision in *Lim, supra,* 18 Cal.2d 872, are not present here. In *Lim,* the plaintiff tried to enjoin a private party defendant from engaging in illegal conduct. The *Lim* court held an injunction was not allowed because the defendant would otherwise be subject to a trial for a criminal offense without the protections of a jury trial or the higher standard of proof required in criminal trials. In this taxpayer's action, by contrast, it is the government which will be prevented from engaging in illegal conduct, with the Penal Code violations serving as the yardstick by which to measure its conduct. As we have already observed, any individual defendants are enjoined solely in their official capacities. No private parties will be prosecuted, and it is highly doubtful whether the judgment from a civil injunction proceeding would have any collateral estoppel effect in any later criminal prosecution. (*People v. Superior Court (Lucero)*, *supra,* 49 Cal.3d at p. 20, fn. 3.)[11]

### 1.6 We Choose to Not Follow the *ALDF* Decision, Nor Does *ALDF* Constitute an Intervening Change in the Law for Purposes of the Law of the Case Doctrine

After oral argument in this matter, the First District Court of Appeal filed its decision in *ALDF, supra,* 239 Cal.App.4th 1286, holding that a taxpayer action based on an alleged violation of a criminal animal abuse provision was not proper. The City contends this is an intervening change of law such that we should not apply law of the case principles here.

---

[11]   In its supplemental briefing the City contends that, under *Schur*, Leider lacks standing to bring this taxpayer's action. Because we conclude that *Schur* and section 3369 are not applicable here, the standing argument founded on those two authorities fails.

22

In *ALDF,* the plaintiffs sued the state agency in charge of organizing the annual state fair, alleging that crates used to exhibit pigs at the fair were so small that their use constituted animal abuse under Penal Code section 597t, one of the precise violations at issue in the present appeal.

The *ALDF* court affirmed a judgment of dismissal after the trial court sustained without leave to amend the defendant's demurrer on the ground that violations of the animal abuse laws are not enforceable through a taxpayer action. The *ALDF* court first turned to its earlier decision in *Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136, where the plaintiff sued a business that raised dairy calves, alleging that they violated Penal Code section 597t by keeping the calves in small isolation crates. The *Mendes* court held that state laws authorizing certain corporations dedicated to preventing cruelty to animals to enforce those laws by filing complaints with a magistrate preempted civil actions by anyone else to enforce those laws.[12]

Based on this comprehensive statutory enforcement scheme, the *ALDF* court concluded that, assuming the state fair agency was violating the animal abuse laws, its conduct would not go unchallenged even in the absence of a taxpayer's action. As a result, the plaintiff lacked standing to bring its taxpayer's action. (*ALDF, supra,* 239 Cal.App.4th at pp. 5-7, 9.) The *ALDF* court found support for its holding in *Schur, supra,* 47 Cal.2d 11. The *ALDF* court characterized *Schur* as holding that taxpayer actions to enjoin criminal conduct are not allowed where administrative remedies were available. Analogizing from that, the *ALDF* court concluded that the legislative enforcement scheme for violations of the animal abuse laws should also be viewed as the sole remedy for such violations. (*ALDF,* at p. 1301.)

The City contends we should adopt the reasoning of *ALDF* and reverse the judgment for Leider. We decline to do so. The primary purpose of section 526a is to "enable a large body of the citizenry to challenge governmental action which would

---

**12**      The *Mendes* decision did not mention *Schur,* Code of Civil Procedure section 526a, or Civil Code section 3369.

23

otherwise go unchallenged in the courts because of the standing requirement." (*Blair, supra,* 5 Cal.3d at pp. 267-268.) Although Corporations Code section 10404 gives certain animal cruelty prevention organizations the power to file animal cruelty complaints and "aid in [their] prosecution," only public prosecutors may prosecute criminal offenses, and they have the sole discretion to determine whether to do so. (Gov. Code, § 100, subd. (b); *People v. Eubanks* (1996) 14 Cal.4th 580, 588-589.)

Because the Los Angeles City Attorney's Office has apparently declined to prosecute the Zoo for animal cruelty, the Zoo's mistreatment of its elephants as found by the trial court has gone unchallenged. To hold that the power of a local humane organization to file a complaint bars a taxpayer action where the City refuses to prosecute itself undermines the very purpose of taxpayer actions. To the extent the *ALDF* court relied on *Schur*, we reject its holdings because, as discussed previously, *Schur* does not control.

For related reasons, we also hold that the *ALDF* case does not alter our law of the case analysis. First, the intervening authority exception to that doctrine applies to only Supreme Court decisions. (*Carson Harbor Village, Ltd. v. City of Carson* (2015) 239 Cal.App.4th 56, 70.) Therefore the Court of Appeal's decision in *ALDF* is not eligible for such treatment. Second, because we reject that court's holding, we also conclude that there has been neither a misapplication of existing principles nor a substantial injustice based on that case.

Having concluded that Leider could bring his action based on alleged violations of the Penal Code's animal abuse provisions, we next consider whether the trial court's judgment in regard to those allegations was proper.[13]

2.    *The Order to Rototill the Soil on the Exhibit Was Proper*

---

[13]    The trial court enjoined the City from using bull hooks and electricity as methods of controlling the elephants. Although the City contends the trial court erred because it had discontinued those practices, the City concedes the issue and we therefore do not reach it.

24

Penal Code section 597t provides: "Every person who keeps an animal confined in an enclosed area shall provide it with an adequate exercise area. If the animal is restricted by a leash, rope, or chain, the leash, rope, or chain shall be affixed in such a manner that it will prevent the animal from becoming entangled or injured and permit the animal's access to adequate shelter, food, and water."

The evidence showed that soil compaction led over time to numerous foot and other anatomical problems for the elephants. The evidence also showed that elephants are on the move for 18 hours a day in the wild, require at least one to two hours of supervised exercise in captivity, and received only 40 minutes of such exercise each day.

Based on this evidence, and pursuant to section 597t, the trial court ordered the City to regularly rototill the soil and make sure the elephants exercise one to two hours a day. We set forth the relevant portions of the trial court's factual findings: "Although the evidence is disputed about whether the elephants at the Los Angeles Zoo have 'adequate exercise area,' it is undisputed that the elephants do not get enough exercise time in their 'enclosed area.' According to witnesses called by defendants, . . . elephants in captivity require one to two hours of daily exercise, and the evidence is undisputed . . . that the elephants . . . get no more than 40 minutes of daily exercise, if that. Thus, although the evidence does not directly show that the elephants need more 'exercise area,' it is undisputed that they need more exercise time, which, because of the increased impact on the ground that more exercise would cause, requires more exercise area. Or rototilling, which would remedy the increased impact and resulting compactness and hardness of the ground of the exhibit on which the elephants need to increase the time they spend exercising."

The City contends the trial court erred in fashioning its injunction based on the need for more exercise time, not more exercise area, because Penal Code section 597t mentions only space, not time. The City also contends that the order must be reversed because regulations promulgated under the Fish and Game Code show that the elephants'

25

exercise time and exercise area each met or exceeded the minimum lawful standards.  We take each in turn.

Although the City contends that exercise time was the motivating factor behind the trial court's order, we believe the statement of decision was somewhat unclear and ambiguous in regard to the relationship between the need for more exercise time and the size of the exhibit.  The City does not contend that it raised such an objection with the trial court, and does not address what strikes us as an apparent ambiguity.  As a result, we resolve this ambiguity by inferring that the trial court decided the issue in Leider's favor. (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 896.)  We believe the trial court tried, but failed to clearly express, that in order to accommodate the elephants' need to exercise at all, the soil had to be softened by regular rototilling.  In other words, the risk of harm caused by soil compaction left the elephants with an inadequate exercise area regardless of its size.

We believe such a finding accords with the spirit and letter of Penal Code section 597t.  No matter how large an exercise area might be, if other conditions render it unusable or unsafe for movement by an animal, the area cannot be adequate.  For instance, a dog left in a confined space with sufficient room to move about would still have an inadequate exercise area if the ground were littered with broken glass, leaving it little safe room in which to maneuver.  The evidence in this case showed that the elephants were prone to serious foot, leg, and other anatomical injuries from the repetitive stress of walking on compacted soil.  Based on this, we conclude the trial court could find that their exercise area was inadequate despite its size unless the ground was softened.

The City also contends that the rototilling order is improper because the Zoo is in compliance with Department of Fish and Game regulations concerning the minimum standards for elephant enclosures.  Fish and Game Code section 2120 calls for the promulgation of regulations concerning the transportation, importation, possession, keeping, and confinement of any and all wild animals.  Section 671.3 of title 14 of the

26

California Code of Regulations prescribes the housing requirements for numerous wild animals, including elephants. As relevant here, that regulation provides that "[e]lephants shall be provided free exercise unchained on dirt for a minimum of 5 hours per each 24-hour period." (14 Cal. Code Regs., § 671.3, subd. (b)(M)(2).)[14]

The City contends that the regulation requires nothing more than that the elephants be allowed to move about on dirt, and says nothing about alleviating soil compaction. From this, it argues that its compliance with the regulation exempts it from the reach of Penal Code section 597t. We disagree.

Statutory or regulatory compliance is not a defense to tort liability because statutes and regulations ordinarily define only a minimum standard of conduct. (*Myrick v. Mastagni* (2010) 185 Cal.App.4th 1082, 1087.) We believe that principle is applicable here, especially where the regulatory standards are expressly designated as the minimum standards. As discussed above, leaving an animal to exercise on a surface that is unsuitable and potentially harmful results in the failure to provide an adequate exercise area under section 597t.

Even if we affirm the rototilling requirement, we must still address the City's contention that the exercise duration requirement must be reversed because section 597t says nothing about how much time confined animals must be allowed to exercise, making that part of the order unlawful because it strays beyond the terms of the authorizing statute. (*Armstrong v. Picquelle* (1984) 157 Cal.App.3d 122, 129-129.) The City also contends that the Fish and Game regulations have been satisfied because they require only five hours of free movement each day and the elephants are allowed to roam about as they choose nearly all day long.

As we read the trial court's statement of decision, the need for more exercise time is inextricably linked to the poor soil conditions in the exhibit, which have left the

---

**14** The regulation also sets minimum space standards for housing elephants. (14 Cal. Code Regs., § 671.3, subd. (a)(10).) Because our analysis turns on the soil quality, not the size of the enclosure, we need not address that issue.

27

elephants with an inadequate exercise area.  Ensuring that the elephants get a set amount of exercise time in conjunction with the regular rototilling of the soil is a way to measure whether the rototilling in fact allows the elephants to exercise properly at all.  If the rototilling relieves the soil compaction problems and ultimately alleviates the physical ailments that the soil compaction causes, the trial court might then wish to remove or modify the exercise duration requirement.  We believe the trial court should therefore retain jurisdiction to monitor the effects of the rototilling and exercise requirements it has imposed.

## B.    Leider's Cross-Appeal

In the following portion of our decision, we address the issues raised by Leider's cross appeal concerning:  (1)  the trial court's decision to have the elephant exhibit remain open, (2) the court's findings that the certain Penal Code provisions governing animal cruelty either had not been violated or were not applicable, and (3) that Leider was not entitled to relief under the injury prong of section 526a.

1.    *Substantial Evidence Supported the Findings the Conditions at the Elephant Exhibit Did Not Amount to Abuse or Cruelty as Defined by the Penal Code; Therefore the Trial Court Did Not Abuse Its Discretion by Declining to Shut Down the Elephant Exhibit*

Leider contends that the trial court should have shut down the elephant exhibit based on the court's findings that the exhibit created conditions that were detrimental to the physical, social, and emotional well being of the elephants.  This included findings that the elephants were subject to physical and emotional suffering due to the soil compaction issues, the use of hot wires to restrict their movements away from trees and grass, and the absence of an outlet for the male elephant's sexual frustration.  The trial court was also concerned about the level of care the elephants received because their keepers were ill informed and had misguided opinions about elephant care and behavior.

Despite these findings, the trial court concluded that the conditions at the exhibit did not amount to abuse or cruelty under Penal Code sections 596.5 or 597.  Instead, the

28

trial court found that the case "raises the question of whether the recreational or perhaps educational needs of one intelligent mammal species outweigh the physical and emotional, if not survival needs of another. Existing California law does not answer that question."

Leider contends the trial court erred because its own findings showed that the elephants were suffering. We believe substantial evidence supported the trial court's decision. Penal Code section 596.5 makes it a misdemeanor to engage in abusive discipline of elephants through a non-exclusive list of practices that includes: depriving them of food, water, or rest; using electricity; physical punishment that damages, breaks, or scars their skin; inserting any instrument into a bodily orifice; or using block and tackle. Penal Code section 597 proscribes cruelty to animals in general, and provides categories of conduct such as: maliciously and intentionally maiming, mutilating, or torturing an animal; overdriving, overloading, torturing, tormenting, or cruelly beating an animal; and depriving an animal of necessary food and water, or inflicting needless suffering or unnecessary cruelty. (Pen. Code, § 597, subds. (a), (b).)

These provisions mark how our society has evolved to date in regard to the treatment of animals. As the trial court suggested, the issues posed by this appeal mark the path ahead we may one day move down as our understanding and appreciation of our fellow creatures continue to move forward.

We agree that the exhibit places the elephants in an unnatural environment that is perhaps only an echo of their life in the wild. Setting aside the dangers posed by ivory poachers, we have no doubt the elephants would do better if they were not captive. We also recognize that animal sanctuaries might well provide a better form of captivity, and that a better zoo exhibit might be constructed. Even so, we cannot say that the current conditions constitute abuse or cruelty as defined in Penal Code sections 596.5 and 597. Instead, as the trial court observed, the deficiencies in the elephants' living conditions are in large measure by-products of their captivity.

29

In short, we conclude that substantial evidence supports the trial court's finding of the absence of abuse or cruelty under the law. At bottom, the scope of injunctive relief was a matter left to the trial court's discretion. Leider asked the trial court to shut down the exhibit. Despite the trial court's misgivings about the quality of care the elephants received and the shortcomings in their conditions of captivity, the trial court did not abuse its discretion by deciding that the deficiencies it found did not warrant the extreme step of shutting down the exhibit.[15]

2.  *The Trial Court Properly Denied Relief Under Penal Code Section 597.1*

Penal Code section 597.1 makes it a misdemeanor for any owner or keeper of an animal "who permits the animal to be in any building, enclosure, lane, street, square, or lot of any city, county, city and county, or judicial district without proper care . . . ." (Pen. Code, § 597.1, subd. (a).) The statute goes on to provide guidelines for the seizure or destruction by humane officers of stray or abandoned animals. (Pen. Code, § 597.1, subds. (a)-(k).)

The trial court found that the elephants were not receiving proper care, but declined to award injunctive relief for two reasons: (1) the provision applied to only stray or abandoned animals, and did not apply to elephants kept in zoos; and (2) the section did not "provide a legal standard by which defendants' conduct can be tested for purposes of the 'illegal expenditure' provision of . . . section 526a."

Leider contends the trial court erred because nothing in the statute limits it to stray or abandoned animals or precludes its application to zoo elephants. According to Leider, the trial court's finding that the elephants did not receive proper care – particularly in

---

[15]    Leider also contends that the City violated a federal regulation requiring that elephants must be in enclosures that "provide sufficient space to allow each animal to make normal postural and social adjustments with adequate freedom of movement. Inadequate space may be indicated by evidence of malnutrition, poor condition, debility, stress, or abnormal behavior patterns." (9 C.F.R. § 3.128.) The trial court expressly rejected such a finding because the exhibit allowed the elephants to make normal movements. We see no basis for overturning the factual finding.

regard to the level and quality of veterinary care provided by the Zoo – virtually mandated an injunction closing the exhibit, or, alternatively, as stated in his appellate brief – take steps "to stop the violations which have been established."

We disagree. The court in *People v. Untiedt* (1974) 42 Cal.App.3d 550 (*Untiedt*) construed section 597f, which requires proper care and attention for animals that have been "abandoned or neglected," and concluded that the statute applied to only such animals. (*Id.* at p. 553.) Section 597.1, subdivision (a) refers to animals that are "stray or abandoned," and, by the same logic, must apply to only such animals.

The *Untiedt* court also held that the phrase "proper care and attention" had to be construed in context with its companion Penal Code provisions concerning abuse of and cruelty to animals. (*Untiedt, supra,* 42 Cal.App.3d at p. 554.) When viewed in that context, proper care and attention means inadequate care likely to result in the infliction of unjustifiable pain, suffering, or cruelty. (*Ibid.*) As previously discussed, though less than optimal, the care and treatment of the elephants does not amount to cruelty under the applicable Penal Code provisions. The injunction the trial court issued may very well ameliorate the most serious of the problems the elephants face in captivity. Because the trial court will maintain jurisdiction to oversee the implementation of the injunction, the court will have further opportunity to reconsider the treatment of the elephants in the future.

3.      *Reversal In Favor of Leider Is Not Compelled Under the Injury Prong Element of a Taxpayer's Action*

The trial court declined to provide further injunctive relief under the injury prong of section 526a under the principle that a taxpayer's action is not proper where there is no legal standard against which the government's conduct can be measured and the action would intrude into the domain of legislative or executive discretion. (See *Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150, 160-161 [trial courts "cannot formulate decrees that involve the exercise of indefinable discretion; their decrees can only restrict conduct that can be tested against legal standards. [Citation.]"].)

Leider contends the trial court erred because it found the elephants were being injured by the conditions at the zoo, and because section 526a clearly applies to such injuries independent of that statute's waste and illegal expenditure prongs.

We appreciate Leider's contention but ultimately find it unpersuasive. First, we affirm the trial court's injunction imposing rototilling and exercise requirements on the Zoo. That leaves shutting down the exhibit as the only other unfulfilled request for relief. We realize that the harm suffered by the elephants is both cumulative and, because it can occur only in the future, to some extent, speculative. We agree with the trial court that there is no standard by which to measure this type of harm in order to justify closing a multi-million dollar public exhibit.

## DISPOSITION

The judgment is affirmed and the trial court shall retain jurisdiction to monitor whether the City is complying with the rototilling and exercise time requirements and to modify those orders as appropriate if warranted by changed conditions. Plaintiff and cross-appellant Leider shall recover his costs on appeal.


                                        RUBIN, J.

I CONCUR:



            FLIER, J.




32

**Leider v. Lewis et al.**

**B244414**

**Bigelow, P. J., Dissenting:**

I respectfully dissent. The majority's decision in this case will empower Leider to bring endless contempt proceedings against the Los Angeles Zoo, all based on injunctions that are contrary to California law. The trial court's findings of fact indicate that, whether in violation of Penal Code provisions or not, the living conditions of the elephants at the Zoo leave much to be desired, particularly when compared with what experts know about wild elephant habits, health, and social behaviors. Still, in my view this case ultimately turns not on any unique qualities or needs of elephants, but instead is necessarily determined based on the general principles that apply to taxpayer suits.

Unlike the majority, I would conclude Civil Code section 3369 (section 3369), which prohibits the issuance of an injunction to enforce a penal law, and which has been interpreted to apply to taxpayer suits, barred the relief Leider sought based on alleged violations of the Penal Code. I disagree with the majority that law of the case bars our consideration of the section 3369 issue raised in the City's appeal. Moreover, even if law of the case would otherwise prevent our consideration of the City's arguments, I find it inappropriate to apply the doctrine here because doing so will result in substantial injustice: the approval of injunctions unauthorized by law that will almost certainly spawn litigation for some time to come. The City believes the injunctions are unlawful; Leider believes the injunctions did not go far enough to protect the elephants. It seems inevitable that disputes over the City's compliance with the injunctions will ensue. While this might not be of concern as to valid injunctions, if, as the City contends, section 3369 and legal precedent prohibited the injunctions issued here, it would be unjust to affirm them and pave the way for contempt litigation in the future.

2

## I.  The Demurrer to the Amended Complaint Should Have Been Sustained

An order overruling a demurrer may be reviewed on an appeal from the final judgment.  (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 912-913.)  When determining whether the demurrer was properly overruled, we must accept as true all facts properly pleaded in the complaint.  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38.)  The standard of review is de novo.[1]  (*Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 918.)

### A.  This Court Should Not Invoke Law of the Case to Prevent Consideration of the City's Arguments

" 'The doctrine of "law of the case" deals with the effect of the *first appellate decision* on the subsequent *retrial or appeal*: The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' [Citation.]" (*Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491 (*Morohoshi*).)  The doctrine applies even if the subsequent reviewing court concludes the first opinion was erroneous.  (*Ibid*.; *Lindsey v. Meyer* (1981) 125 Cal.App.3d 536, 541.)  For the doctrine to apply, " '[i]t is fundamental that the point relied upon as law of the case must have been *necessarily involved* in the case.' [Citation.]" (*Gyerman v. United States Lines Co.* (1972) 7 Cal.3d 488, 498.)  Law of the case does not apply to points of law "which might have been but were not presented and determined in the prior appeal," but it is "applicable to questions not expressly decided but implicitly decided because they were essential to the decision on the prior appeal." (*Estate of Horman* (1971) 5 Cal.3d 62, 73.)

---

[1]  Were I considering the City's argument as challenging errors that warranted reversal of the final judgment, irrespective of the propriety of the ruling on the demurrer, the standard of review and the analysis would be the same.  The issues presented are legal questions which we review de novo.

It is undisputed that the applicability of section 3369 as a bar to Leider's claims was neither raised by the parties in the prior appeal, nor was it expressly determined by this court. However, whether the issue was essential to the decision is a closer question. "Where the particular point was essential to the decision, and the appellate judgment could not have issued without its determination, a necessary conclusion is that the point was *impliedly* decided, even though the point was not raised by counsel or expressly mentioned." (*Eldridge v. Burns* (1982) 136 Cal.App.3d 907, 921.)

In the first appeal, the plaintiffs argued the trial court erred in concluding their claims were not justiciable. In resolving this question, we concluded the plaintiffs had raised triable issues of fact as to whether the City was engaging in illegal expenditures by virtue of acts or omissions alleged to be in violation of Penal Code section 596.5. We concluded Penal Code section 596.5 provided a legal standard by which the alleged governmental conduct could be tested, thus the illegal expenditure claims were justiciable. Other issues regarding the legal unavailability of injunctive relief under section 526a when based on a penal law were neither raised nor determined in the first appeal. Whether section 3369 barred injunctive relief for the alleged illegal expenditure claims was not an explicit or implicit ground of the decision. (*Morohoshi, supra,* 34 Cal.4th at p. 492.) Our first decision did not state a rule of law necessary to the decision of the case that we may apply in this subsequent appeal to resolve the section 3369 issue. (*Greene v. Bank of America* (2015) 236 Cal.App.4th 922, 932; *Sefton v. Sefton* (2015) 236 Cal.App.4th 159, 172, fn. 6 (*Sefton*).)

It also cannot "fairly be said that determination of the issue was essential to the decision." (*Estate of Horman, supra,* 5 Cal.3d at p. 74; *Gyerman v. United States Lines Co., supra,* 7 Cal.3d at p. 498.) Courts have concluded the determination of an issue was essential to an appellate decision when the first opinion could not have been written had the court not rejected the arguments advanced in subsequent proceedings. Thus, in *Nevcal Enterprises, Inc. v. Cal-Neva Lodge, Inc.* (1963) 217 Cal.App.2d 799, the first appellate court concluded a contract concerning property in Nevada was enforceable in

4

California. Law of the case applied in a second proceeding to prevent consideration of the argument that the same contract was illegal under Nevada law. Although the argument was not explicitly rejected in the first opinion, the second court concluded the validity of the contract under Nevada law was an "essential condition precedent to the previous determination of the contract's enforceability in California[.]" (*Id.* at p. 804.) Similarly, in *Puritan Leasing Co. v. Superior Court* (1977) 76 Cal.App.3d 140, 149, a decision that a particular lease was valid and enforceable implicitly rejected the argument that the lease was unenforceable for mistake or fraud.

In *Yu v. Signet Bank/Virginia* (2002) 103 Cal.App.4th 298 (*Yu*), in a first appeal, the court reversed a summary judgment after concluding there were triable issues of fact as to abuse of process and unlawful business practice claims arising out of alleged distant forum abuse. Law of the case prevented the defendants from subsequently arguing a California Supreme Court case relied upon in the first appeal was wrongly decided. The doctrine also prevented the defendants from asserting the plaintiffs failed to state a claim because the defendants' conduct was protected by the litigation privilege and the First Amendment. The court reasoned the issue of whether the plaintiffs had a cause of action for abuse of process under existing precedent remained the same and the defendants had merely "refined their arguments as to that issue." (*Id.* at p. 311.)

While this case shares some similarities with *Yu*, I, unlike the majority, also find applicable *Estate of Horman,* a proceeding to determine heirship in which the government contended certain interests in the decedent's estate should escheat to the state. (*Estate of Horman, supra,* at p. 67.) In a first appeal, the court considered a judgment finding the survivors had not sufficiently established their relationship to the decedent. In subsequent trial court proceedings, the state argued for the first time that the survivor claimants had not appeared and made a demand within a five-year period prescribed by the Probate Code. Although this argument, if successful, would have eliminated the claimants' petition in its entirety in the first appeal, the California Supreme Court concluded law of the case did not apply to bar consideration of the five-year

5

argument in proceedings after the first appeal.  (*Id.* at pp. 73-74.)  The majority distinguishes *Estate of Horman* on the ground that the issue raised in the second appeal was a procedural bar, while the first appeal concerned only the merits.  Yet, whether construed as a procedural issue or a substantive one, the "five-year period" problem was a threshold issue that was not raised until after the case was returned to the trial court following the first appeal.  The *Estate of Horman* court concluded the first decision was not law of the case on the five-year argument because it was not raised by either party, was not expressly determined by the court, and was not essential to the first decision.  (*Id.* at p. 74.)

Applying the reasoning of these cases, I would conclude law of the case does not prevent our consideration of the section 3369 issue in this second appeal.  Our first opinion considered only a narrow issue regarding the justiciability of the plaintiffs' claims, and concluded there were triable issues of material fact related to alleged illegal expenditures in connection with Penal Code section 596.5 alone.  Whether section 3369 barred any injunctive relief for the alleged illegal expenditure claims was not a ground of the decision.  (*Morohoshi, supra,* 34 Cal.4th at p. 492.)

Moreover, departure from the rule of law of the case may be appropriate to prevent an "unjust decision."  (*People v. Shuey* (1975) 13 Cal.3d 835, 846, abrogated on another ground as stated in *People v. Bennett* (1998) 17 Cal.4th 373, 391, fn. 4.)  This has been interpreted, narrowly, to mean when "there has been a manifest misapplication of existing principles resulting in substantial injustice or where the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations."  (*Morohoshi, supra,* 34 Cal.4th at pp. 491-492.)  Even if law of the case would otherwise apply to prevent us from considering the section 3369 argument, I would find the "unjust decision" exception appropriate here.  As discussed in greater detail below, in my view, section 3369 and the decision in *Nathan H. Schur Inc. v. City of Santa Monica* (1956) 47 Cal.2d 11 (*Schur*), represent longstanding principles

that foreclose the injunctive relief Leider sought for alleged violations of the Penal Code. (*Sefton, supra,* 236 Cal.App.4th at p. 172, fn. 6.)

The majority asserts the only injustice to result from application of law of the case is that the City will be required to rototill the soil in the elephant exhibit and provide the elephants with a certain amount of exercise. I would agree with the majority's decision were this, in fact, the case. I wholly favor ensuring the elephants are properly housed and exercised. However, I discern another outcome that *would* result in substantial injustice. If we refuse to consider the applicability of section 3369, we will affirm ongoing injunctive relief when no such relief is in fact available. (See *Moore v. Kaufman* (2010) 189 Cal.App.4th 604, 617 [refusing to apply law of the case where party sought to collect a large amount based on patently void judgment and debtor faced incarceration for resisting collection efforts].) This is no minor concern. If injunctive relief was not available as a matter of law to address the concerns raised by the plaintiff, I view it to be a substantial injustice that the City should be required, for an indefinite period of time, to face potential contempt actions for any perceived or alleged failure to comply with the injunctions. In my view, this would be a substantial injustice, warranting a departure from the rule of law of the case, even if it would otherwise apply here.

Further, in light of the procedural posture of this case, the concerns motivating the doctrine of law of the case—judicial economy and the desire to " 'avoid the further reversal and proceedings on remand that would result if the initial ruling were not adhered to in a later appellate proceeding' " (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 302)—are not present here. Considering the City's arguments raised in this appeal has the potential to simply terminate the case, and would not lead to a remand for further proceedings. I therefore would consider whether section 3369 prohibited the issuance of an injunction as relief on Leider's section 526a illegal expenditure claims based on alleged violations of the Penal Code.

7

**B. Civil Code Section 3369 Barred Leider's Section 526a Claims Seeking Enforcement of Penal Laws**

**i. Civil Code Section 3369**

Civil Code section 3369 provides: "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or as otherwise provided by law." The statute was enacted in 1872 as merely "the expression of the fundamental rule that courts of equity are not concerned with criminal matters and they cannot be resorted to for the prevention of criminal acts, except where property rights are involved." (*Perrin v. Mountain View Mausoleum Ass'n* (1929) 206 Cal. 669, 671 (*Perrin*), citing Pomeroy's Equity Jurisprudence (2d Ed.) pp. 4291-4292.) Thus, in cases in which the State seeks an injunction to prevent or stop criminal behavior, courts have generally denied relief under section 3369, unless there is evidence that the behavior, in addition to violating a penal law, also constitutes a public nuisance. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090 (*Acuna*)[acts of conduct which qualify as public nuisances are enjoinable as civil wrongs or prosecutable as criminal misdemeanors]; *People v. Lim* (1941) 18 Cal.2d 872, 880-882 (*Lim*) [urging caution on criminal injunctions and keeping nuisance exception narrow, but concluding complaint stated cause of action where People alleged gambling house drew crowds of disorderly people who disturbed the peace and obstructed traffic]; *Monterey Club v. Superior Court* (1941) 48 Cal.App.2d 131, 144-150 [rejecting injunction to abate gambling operation alleged to be in violation of ordinance; no evidence of a public nuisance]; *People v. Steele* (1935) 4 Cal.App.2d 206, 211 [refusing injunction to prevent chiropractors from engaging in certain types of treatment; rejecting argument that the treatment methods constituted nuisance in the absence of a statute prohibiting them]; *People v. Seccombe* (1930) 103 Cal.App. 306, 309-313 [no injunction to restrain defendant from pursuing the "occupation of usurer"]; *Weis v. Superior Court of San Diego County* (1916) 30 Cal.App. 730, 731-732 [injunction was permissible to abate public nuisance of exhibition of naked women].)

8

Similarly, private citizens may not secure an injunction to enforce a penal law, unless an exception under section 3369 applies. (*Major v. Silna* (2005) 134 Cal.App.4th 1485, 1498-1499 [in anti-SLAPP motion party failed to demonstrate probability of prevailing where complaint attempted to enjoin another individual's alleged violation of a municipal campaign finance ordinance]; *Perrin, supra,* 206 Cal. at pp. 670, 674 [injunction denied to plaintiff seeking to enjoin defendants from constructing or operating mausoleum; despite being convicted of violating ordinances, defendants continued operations; complaint did not state facts constituting nuisance per se or that plaintiff suffered some exceptional damage]; *Smith v. Collison* (1931) 119 Cal.App. 180, 183-184 [injunction allowed to restrain defendants from opening a store in violation of a zoning ordinance on ground the erection of the store would create a nuisance and plaintiffs would suffer exceptional damage]; *Stegner v. Bahr & Ledoyen, Inc.* (1954) 126 Cal.App.2d 220, 231 (*Stegner*) [no injunction where plaintiffs failed to prove the operation of rock quarry constituted a nuisance or would cause them legal injury; plaintiffs were seeking solely to enforce a penal law].)

A limited number of early cases took a broad view of the availability of an injunction when allegedly criminal conduct was involved. These cases either expansively interpreted the definition of nuisance, or suggested acts could be enjoined if, in addition to being crimes, they also adversely affected the plaintiff's property rights. (See e.g., In *Herald v. Glendale Lodge No. 1289* (1920) 46 Cal.App. 325, 327, 333 [plaintiff allowed injunction to restrain lodge from serving alcohol to members in violation of city ordinance on theory that fine or attorney fees might cause club members, including plaintiff, pecuniary loss]; *In re Wood* (1924) 194 Cal. 49, 52-57(*Wood*) [state allowed injunction ordering Industrial Workers of the World to cease attempts to prevent conspiracy to damage property and enjoining acts of criminal syndicalism].)

9

But in *Lim, supra,* the California Supreme Court took a more constrained approach and established the standard and reasoning adopted in most subsequent cases regarding the limited availability of injunctions to prevent crimes. (*Acuna, supra,* 14 Cal.4th at pp. 1106-1107 [describing *Lim* as articulating an important limitation on the scope of the government's power to exploit the public nuisance injunction].) In *Lim*, the state sought an injunction to restrain the defendants from operating a gambling establishment. On appeal, the People argued gaming houses were inherent public nuisances and they could therefore be enjoined, despite the section 3369 prohibition. In analyzing this claim, the California Supreme Court acknowledged courts had issued injunctions against criminal conduct if that conduct constituted a nuisance. (*Lim, supra,* 18 Cal.2d at pp. 877-878.) But the court rejected any broadening of the exception by judicial expansion of the public nuisance doctrine beyond the statutory definition set forth in former Civil Code section 3479.[2] (*Id.* at p. 878.)

The court offered a narrow interpretation of its earlier holding in *Wood*: "The case of [*Wood*], which has been severely criticized . . . held only that the injunction granted was not void even though conceivably erroneous. This was so because the conspiracy there involved could be considered a public nuisance as a threatened impairment of the free use of property of the citizens of the state." (*Lim,* at pp. 878-879.) The court explained "compelling reasons of policy require that the responsibility for establishing those standards of public morality, the violations of which are to constitute public nuisances within equity's jurisdiction, should be left with the legislature." (*Id.* at pp. 879-880.) The court further reasoned:

---

[2]     Former Civil Code section 3479 stated: "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance." (Amended by Code Am. 1873-74, ch. 612, § 284.)

"Conduct against which injunctions are sought in behalf of the public is frequently criminal in nature. While this alone will not prevent the intervention of equity where a clear case justifying equitable relief is present [citations], it is apparent that the equitable remedy has the collateral effect of depriving a defendant of the jury trial to which he would be entitled in a criminal prosecution for violating exactly the same standards of public policy. [Citations.] The defendant also loses the protection of the higher burden of proof required in criminal prosecutions and, after imprisonment and fine for violation of the equity injunction, may be subjected under the criminal law to similar punishment for the same acts. For these reasons equity is loath to interfere where the standards of public policy can be enforced by resort to the criminal law, and in the absence of a legislative declaration to that effect, the courts should not broaden the field in which injunctions against criminal activity will be granted. Thus, for the reasons set forth, the basis for an action such as this must be found in our statutes rather than by reference to the common law definitions of public nuisance." (*Id.* at pp. 880-881.)

*Lim* firmly established the general rule that in the absence of other specific statutory authorization, a court may not grant the state an injunction to enforce a penal law, unless the conduct to be enjoined is a nuisance. Subsequent courts applied the same rule in denying injunctions to private citizens when the purpose of the injunction was simply to enforce a penal law, and the enjoined conduct was not also a nuisance, or unfair competition after section 3369 was amended to include that exception. (See *Acuna, supra,* 14 Cal.4th at pp. 1106-1107; *Stegner, supra,* 126 Cal.App.2d at pp. 231-232; *International Etc. Workers v. Landowitz* (1942) 20 Cal.2d 418, 422-423 (*Landowitz*); *People v. Brophy* (1942) 49 Cal.App.2d 15, 31-32.)

### ii. *Schur*

The question in this case is whether the section 526a claims based on the Zoo's alleged violations of Penal Code sections 596.5, 597, 597t, and 597.1, run afoul of section 3369's prohibition against injunctions to enforce a penal law. In *Schur,* the California Supreme Court concluded section 3369 barred a court from issuing an injunction under section 526a to prevent expenditures alleged to be in violation of the Penal Code.

*Schur* concerned antigambling laws in the Penal Code and a Santa Monica ordinance governing the issuance of licenses for gambling establishments. As relevant here, the case involved a suit by the Nathan Schur corporation (Schur) against the city of

11

Santa Monica and its police chief. Schur alleged the city's ordinance allowing issuance of licenses for certain games was illegal under Penal Code section 337. (*Schur, supra,* 47 Cal.2d. at pp. 12-13.) Under Penal Code section 337: "Every state, county, city, city and county, town, or judicial district officer, or other person who shall . . . issue, deliver, or cause to be given or delivered to any person or persons, any license, permit, or other privilege, giving, or pretending to give, any authority or right to any person or persons to carry on . . . any game or games which are forbidden or prohibited by Section 330 of said code; and any of such officer or officers who shall vote for the passage of any ordinance or by-law, giving . . . any person or persons any authority or privilege to open . . . or cause to be opened . . . any game or games prohibited by said Section 330 of the Penal Code, is guilty of a felony."

Schur also alleged the city and police chief had issued illegal licenses to several plaintiffs, ("Troeger licensees"), for games which violated the Penal Code. Schur's complaint alleged "that because of the invalidity of the city laws and the licensing thereunder the city is illegally spending money in such licensing and in policing the games." (*Schur, supra*, 47 Cal.2d at p. 13.) Before trial, the Troeger licensees attempted to renew their gaming licenses. The city council held a noticed public hearing on the renewal applications. Schur's principal testified before the city council in opposition to the renewal application. Following the hearing, the city council concluded the Troeger licensees' games did not violate the Penal Code antigambling laws and they were entitled to licenses. (*Id.* at pp. 13-14.) Despite the city council determination, the police chief continued to refuse to issue the licenses. (*Ibid.*) The Troeger licensees filed a supplemental complaint challenging the city police chief's refusal to renew their gaming licenses. After a trial on the Schur and Troeger licensees complaints, the trial court found the city was illegally licensing the challenged games. The court enjoined the city from expending public funds to license games operated in violation of the Penal Code. The Troeger licensees appealed. (*Id.* at p. 14.)

12

The California Supreme Court framed the issue presented in Schur's complaint as follows: "Basically the action was to enjoin the city officials from possibly committing a crime by issuing licenses for gambling games contrary to state law, although it was also asked that they be restrained from expending the city funds involved in issuing these particular licenses, and that is as far as the judgment went in regard to preventative relief, it did declare the games were contrary to the state laws." (*Schur,* at p. 17.) The court then held the judgment could not stand, for two reasons. First, the court held city officials had the authority to determine whether the challenged games were legal, and the only appropriate avenue to challenge that decision was a review without independent evidence. (*Ibid.*) Second, the court stated "that unless the conduct complained of constitutes a nuisance as declared by the Legislature, equity will not enjoin it even if it constitutes a crime, as the appropriate tribunal for the enforcement of the criminal law is the court in an appropriate criminal proceeding." (*Ibid.*)

The court acknowledged that "a taxpayer may obtain preventive relief against the illegal expenditure of funds by a municipal corporation. (Code Civ. Proc., § 526a; *Simpson v. City of Los Angeles*, 40 Cal.2d 271.)" (*Schur,* at p. 17.) Yet, the court again employed two lines of reasoning to explain why section 526a did not permit the relief issued by the trial court. The court first stated that despite section 526a, when a municipal corporation has, pursuant to valid authority, made a quasi-judicial decision regarding the issuance of a license, the only available relief is a review of that decision by a writ of mandamus or certiorari. A municipal corporation is not "required to justify its actions in a trial *de novo* in the court whether the one attacking its determination is a taxpayer or one of the applicants for a license." (*Id.* at p. 17.) The court noted there had been a public hearing on whether the Troeger licenses violated the Penal Code; notice was provided to all concerned, including taxpayers; and Schur participated in the hearing.[3]

---

[3] Leider's amended complaint did not involve alleged governmental actions whose very legality was the subject of a public hearing or quasi-judicial decision. There were

13

Second, and most relevant here, the court again described the Schur action as "basically one to enjoin the alleged commission of a crime." (*Schur,* at p. 18.) The court adopted and quoted the *Lim* court's analysis regarding California courts' refusal to grant injunctions on behalf of the state by a judicial extension of the term public nuisance; the collateral effects of granting an injunction against criminal conduct; and the direction that courts should not broaden the field in which injunctions against criminal activity will be granted. (*Id.* at pp. 18-19.) Therefore, the judgment enjoining the issuance of the licenses could not stand. (*Id.* at pp. 17-18.)

### iii. Application to this case

According to the majority, *Schur* stands only for the proposition that when administrative review of a quasi-judicial governmental action is available, a taxpayer may not use section 526a to challenge that action in court. The majority also reads *Schur* as inapplicable to this case because the court viewed the action before it as one to enjoin a crime, instead of as a taxpayer action to stop the illegal use of funds.

I disagree with this narrow reading of *Schur* and would find it governs the result in this case. Like the case before us, *Schur* concerned a taxpayer allegation of illegal expenditure of government funds. Schur claimed the city and police chief were illegally expending government funds by issuing gambling licenses for games that violated the Penal Code; the issuance of such licenses was itself alleged to be an illegal act under Penal Code section 337. In this case, Leider alleged the City was illegally expending government funds by abusing elephants in violation of the Penal Code. Our high court in *Schur* acknowledged section 526a allows taxpayers to challenge a city's illegal expenditure of funds, but it did not accept that such authority extended to enjoining a crime. Despite section 526a, the court described the action was "basically one to enjoin the alleged commission of a crime." Leider's amended complaint, with respect to

---

public hearings relating to the City's decision to expand and redesign the elephant exhibit. But the record does not indicate that any entity involved in the hearings had the authority to determine whether the Zoo had violated or would violate the Penal Code in the operation of the elephant exhibit.

14

allegations based on the Penal Code, is also "basically one to enjoin the alleged commission of a crime" or crimes. *Schur* further applied the language of *Lim* to a case like this one in which a citizen, rather than the state, sought the challenged injunctive and declaratory relief, against a governmental entity. Under *Schur*, section 526a does not create an exception to section 3369.

I note that at least three other courts have recognized legal principles or statutes may prevent relief under section 526a where it might otherwise seem to be available. In *Daar v. Alvord* (1980) 101 Cal.App.3d 480 (*Daar*), the court held a taxpayer could not prosecute a section 526a action seeking injunctive relief to prevent county and city officials from spending allegedly illegally imposed and collected taxes. Provisions of the California Constitution and Revenue and Taxation Code prohibit courts from preventing or enjoining the collection of any tax. (*Id.* at p. 484.) The court considered whether there was a conflict between section 526a and the relevant constitutional and Tax and Revenue Code provisions. It concluded: "We have no difficulty in harmonizing these constitutional and statutory provisions. We deem that the illegal governmental activity which is subject to taxpayer challenge in [section 526a] does *not* include activity characterized as illegal solely by reason of purportedly illegal tax *collection.* It can be argued-but not reasonably so we think-that any expenditure of illegally collected taxes is per se an illegal governmental activity. We reject any such broad characterization as contrary to accepted principles of reasonable construction of constitutional and statutory provisions." (*Id.* at pp. 485-486.)

Similarly, in *Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472 (*Chiatello*), the court found the plaintiff lacked standing to prosecute an action under section 526a seeking to enjoin the collection of a challenged municipal payroll tax. The reasoning in *Daar* was not controlling because the case concerned a municipal, rather than state, tax. However, the *Chiatello* court explained the principle that courts should not enjoin the collection of a tax had received judicial recognition for nearly a century before it appeared in the California Constitution in 1910. (*Chiatello,* at

15

p. 495.) The court further noted there were no reported decisions in which tax collection was enjoined, confirming, at least circumstantially, that the power to issue such an injunction does not generally exist. (*Id.* at p. 496.) Thus, although the court recognized there was "considerable force" in the argument that a " 'claim for a refund could never redress the harm that [the plaintiff's complaint] and Section 526a seek to prevent—the wasteful expenditure of public monies in implementing an invalid ordinance,' " that argument had to yield to the fact that the remedy sought—enjoining tax collection—"is a remedy California's common law had virtually forbidden prior to enactment of section 526a." (*Id.* at pp. 497-498.) The court rejected the plaintiff's contention that section 526a lacked an exception for tax-related cases, reasoning "the statute would have to be construed to include such an exception because the Legislature would be presumed to have been aware of the common law aversion to enjoining tax collection." (*Id.* at p. 498.) The court could not grant injunctive relief to prevent tax collection, section 526a notwithstanding. (*Ibid.*)

Most recently, in *Animal Legal Defense Fund v. California Exposition and State Fairs* (2015) 239 Cal.App.4th 1286 (*California Exposition*), the appellate court concluded a taxpayer could not bring a section 526a claim based on a violation of Penal Code section 597 or 597t, two animal cruelty provisions, both of which were also raised in Leider's amended complaint. In *California Exposition*, the court discussed a prior case, *Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136 (*Mendes*), in which the court held there is no implied private right of action for a Penal Code section 597t violation. The court held the plaintiffs could not "circumvent the prohibition recognized in *Mendes* by couching their claim as a section 526a taxpayer action." (*California Exposition, supra,* at p. 1295.) *California Exposition* addresses arguments that were not made in this case. Yet, like *Daar* and *Chiatello*, the court found a limit on the reach of a section 526a action. The court explained: "ALDF seeks to enjoin defendants from illegally using public resources, as opposed to seeking to enforce the animal cruelty law. But section 526a does not create an absolute right of action in

16

taxpayers to assert *any* claim for governmental waste. To the contrary, courts have recognized numerous situations in which a section 526a claim will not lie. [Citations.] To this list, we add a claim for alleged governmental waste based on an alleged violation of Penal Code section 597 or 597t." (*Id.* at p. 1298.)

Although *Schur* did not address the question of a potential conflict between section 526a and section 3369 as explicitly as the courts did in *Daar* and *Chiatello* regarding tax principles, or as the court did in *California Exposition* regarding section 526a and the holding in *Mendes*, I understand *Schur* as reaching a similar conclusion— specifically that section 526a does not override the longstanding principle that injunctions may not issue to enforce a penal law. I find no meaningful basis to distinguish *Schur* from this case, or to avoid the conclusion that section 3369 barred the injunctive and declaratory relief Leider sought on the basis of alleged violations of the Penal Code. Indeed, on appeal, Leider has offered only two arguments to contend *Schur* does not apply in this case. Neither is persuasive, as discussed below.

### iv. The 1977 Amendment of Civil Code section 3369 Does Not Change the Analysis

Leider's primary response to the City's argument is that *Schur* is no longer good law because it was based on a prior version of section 3369. When *Schur* was decided in 1956, former Civil Code section 3369, subdivision (1) read: "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or unfair competition." (Stats. 1933, ch. 953, § 1, p. 2482, unchanged until 1963.) Subdivisions (2) through (5) concerned the injunctive relief available in actions for unfair competition. The statute's provisions regarding unfair competition were amended four more times. In 1977, the Legislature amended section 3369, removing the unfair competition provisions and leaving only the first subdivision which read and still reads: "Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or as otherwise provided by law." (Civ. Code, § 3369.) The

17

provisions regarding unfair competition were moved to the Business and Professions Code. (Legis. Counsel's Dig., Assem. Bill No. 1280 (1977-1978 Reg. Sess.).) Newly enacted Business and Professions Code section 17202 read: "Notwithstanding Section 3369 of the Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or penal law in a case of unfair competition."

Leider reasons the pre-1977 version of section 3369 created impermissible conflicts with statutes such as section 526a, requiring courts to "ultimately emasculate one statute to honor another." Essentially, Leider asserts the 1977 amendment was a legislative response to *Schur*, or, even if not a direct response, the amendment changed the law underlying the *Schur* decision. I disagree with this reasoning as inconsistent with the language of section 3369, the legislative history, and the relevant caselaw.

In interpreting a statute, our "goal is to divine and give effect to the Legislature's intent."**4** (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1324 (*Brodie*).) "We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.] ' " 'Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.' [Citation.] Interpretations that lead to absurd results or render words surplusage are to be avoided. [Citation.]" [Citation.]' [Citation.]" (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037.) We presume as we must that the Legislature is aware of existing law, including caselaw interpreting a statute, and decisions relating directly to the legislation enacted. (*Borikas v. Alameda Unified School Dist.* (2013) 214 Cal.App.4th 135, 150; *People v. Childs* (2013) 220 Cal.App.4th 1079, 1104.)

---

**4** The interpretation of a statute is a question of law we review de novo. (*Lazarin v. Superior Court* (2010) 188 Cal.App.4th 1560, 1569.)

Further, as the reviewing court, " '[w]e do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied.' [Citations.]" (*Brodie, supra,* 40 Cal.4th at p. 1325; *Regency Outdoor Advertising, Inc. v. City of Los Angeles* (2006) 39 Cal.4th 507, 526.) Nothing in the language of section 3369 as amended in 1977 indicates a legislative intent to overrule the principle established by *Schur*. Indeed, when the former and amended versions of the statute are compared, nothing in the language explicitly or implicitly indicates any change of substantive law.

In fact, the language of some opinions before 1977 suggests courts already construed section 3369 as not prohibiting injunctive relief "as otherwise provided by law." In *Landowitz, supra,* 20 Cal.2d 418, our high court rejected a claim seeking to enjoin a violation of a city ordinance. The claim was based on an unfair competition ordinance that provided for the regulation of competitive practices among cleaners and dyers, and was "penal in nature." (*Id.* at pp. 420-421.) An enabling statute specifically authorized a person to seek injunctive relief for violations of the ordinance. However, the enabling statute allowing for injunctive relief was repealed. Because the statutory authorization for injunctive relief had been removed, and because the ordinance was penal, the court concluded the plaintiffs' action "to restrain . . . violation [of the ordinance] requires specific authorization, in the absence of which it must be held that the complaint fails to state a cause of action." (*Id.* at p. 421.) The unfair competition exception in section 3369 did not cover the conduct alleged in the complaint. Thus, "[t]he statutory authority for such an action in equity, which was formerly provided by . . . the statutes referred to, has now been withdrawn . . . therefore, no cause of action is stated . . . No other authorization for this action has been called to our attention." (*Ibid.*)

This reasoning suggests courts already understood section 3369 to allow injunctive relief to enforce a penal law when another statute specifically authorized such relief. In *Landowitz*, the problem was that the specific statutory authorization had been withdrawn. A similar idea was alluded to in *People ex rel. Chiropractic League v. Steele* (1935) 4 Cal.App.2d 206 (*Steele*), in which the court refused to allow injunctive relief to prevent acts which violated a penal statute but were not also a public nuisance. In response to the People's petition for rehearing, which in part asserted the consequence of the decision would be "disastrous," the court noted: "It is sufficient to point out that if the legislature had deemed the remedy by injunction necessary to the enforcement of the acts governing the practice of healing arts it would have been an easy matter to provide therefor by statute." (*Id.* at p. 213.) The apparent recognition of courts, prior to 1977, that the Legislature could create exceptions to section 3369 in other statutes counters Leider's argument that the amended version of section 3369 changed the substantive law.[5]

*Landowitz* and *Steele* were decided well before *Schur*. In my view, the most reasonable interpretation of *Schur* is not, as Leider argues, that the court had an impassable conflict and was forced to "emasculate" one statute over the other. Instead, the *Schur* court concluded section 526a did not provide a statutory exception to section 3369. As a result, in 1977, over 20 years after *Schur* was decided, there was no conflict between section 526a and section 3369. Under *Schur,* section 526a did not provide an exception to section 3369. Accordingly, the 1977 amendment to section 3369 replacing "unfair competition" with "as otherwise provided by law" would not include section 526a.

---

**5**     We need not accept the City's argument that "as otherwise provided by law" refers *only* to unfair competition as set forth in Business and Professions Code section 17200, et seq. Other statutes specifically providing for injunctive relief to enforce a penal law may fall within the gambit of the "otherwise provided by law" exception of section 3369. (See e.g., Pen. Code, § 136.2 [court may restrain conduct intimidating or dissuading a witness or victim].) The point here is that in light of *Schur*, section 526a is not, and, as interpreted in *Schur*, never was, one of those provisions.

To the extent the language of section 3369 does not indisputably repudiate any intent to allow injunctive relief under section 526a for claims based on penal laws, we also consider the legislative history. (*Brodie*, *supra,* 40 Cal.4th at p. 1328.) If, as Leider argues, the Legislature intended to overrule cases, including *Schur*, in which courts had concluded injunctive relief under a particular statute was not available due to section 3369, one would expect this intent to be referenced in the legislative history. It is not. Instead, the bill effecting the amendment was repeatedly described as a "technical adjustment."

For example, in an Assembly Committee on Judiciary Bill Digest, A.B. 1280, the bill was described as follows: "The Civil Code contains a chapter . . . which contains the general principles governing injunctive relief. As injunctive relief became more prevalent in unfair competition cases, a process began of adding provisions to that chapter which related only to unfair competition cases. As a result of this process there is now a body of statutory law dealing solely with the enforcement of unfair competition laws which is located in the wrong part of the codes. [¶] This bill transfers these provisions, without substantive change, from the Civil Code to a more appropriate location in the Business and Professions Code." (Assem. Com. On Judiciary, Digest of Assem. Bill No. 1280 (1977-1978 Reg. Sess.) May 19, 1977.) Similarly, a Senate Committee on Judiciary report on A.B. 1280 commented: "This bill merely makes a technical code adjustment in the location of various statutes relating to unfair competition." (Sen. Com. On Judiciary, com. On Assem. Bill No. 1280 (1977-1978 Reg. Sess.) as amended June 3, 1977.)

The legislative history confirms only a single legislative intent behind the 1977 amendment—a "code adjustment." The history is devoid of any intent to change any substantive law, either relating to the general rule under section 3369, or the unfair competition laws. In light of the caselaw, the language of the statute, and the legislative history, there is no basis to conclude that by amending section 3369 to replace "unfair

21

competition" with "as otherwise provided by law," the Legislature intended to effect a change in the law, or address a problem of conflicting statutes.

The two cases Leider cites to support his argument do not mandate a contrary conclusion. *People v. E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315, concerned the scope of unlawful business practices that could be considered unfair competition under Business and Professions Code section 17200. The People sought to enjoin the distribution of obscene matter as defined in the Penal Code. The court noted that while traditionally courts of equity declined to issue injunctions to enforce penal laws, "the fact that certain conduct is a crime will not prevent the issuance of an injunction if the conduct also falls within a specific statute authorizing an injunction." (*Id.* at p. 320.) Business and Professions Code section 17202 provided such specific authorization. (*Ibid.*)

Similarly, in *People v. K. Sakai Co.* (1976) 56 Cal.App.3d 531, the People sought an injunction under former section 3369 to enjoin violations of Penal Code sections prohibiting the sale of whale meat. Although the alleged conduct violated a penal law, the action was one seeking to enjoin unfair competition. (See *id.* at p. 533; *People v. McKale* (1979) 25 Cal.3d 626, 633.) Thus, neither *E.W.A.P.* nor *Sakai* supports Leider's argument. Both cases concerned unfair competition at times when first section 3369, then Business and Professions Code section 17202, specifically authorized the issuance of an injunction even if it would also enforce a penal law. Neither case affects the conclusion that under *Schur*, section 526a had been construed by our high court as not providing a similar specific statutory authorization that would take such claims outside of the general section 3369 prohibition against injunctions to enforce penal laws.

The language of the statute and the legislative history provide ample explanation for the 1977 amendment that is entirely unconnected to *Schur*. We have no basis to impute to the Legislature an intent to overrule *Schur*. (*Brodie, supra,* 40 Cal.4th at p. 1328.)

### v. *Schur* Did Not Eviscerate Governmental Liability for "Illegal Expenditures" Under Section 526a

Leider's only other argument is that the *Schur* court's reasoning, or failing to read section 3369 as authorizing injunctions under 526a to enforce penal laws, would eliminate any claim under section 526a for illegal expenditures. I disagree. *Schur* and section 3369 only concern actions seeking to enforce penal laws. Many section 526a claims seeking relief for illegal expenditures concern alleged illegalities that are not penal but are still unlawful. Thus, in the seminal case of *Blair v. Pitchess* (1971) 5 Cal.3d 258, our high court affirmed a judgment issuing injunctive relief to prevent the enforcement of what the court concluded was an unconstitutional claim and delivery law. Within the context of illegal expenditures under section 526a, the court held an injunction under section 526a would properly issue to restrain the enforcement of a statute or other law that is unconstitutional. (*Id.* at pp. 268-269.) Even earlier, in *Wirin v. Parker* (1957) 48 Cal.2d 890, our high court concluded the plaintiff was entitled to seek injunctive relief to prevent the expenditure of public funds to conduct police surveillance by means of concealed microphones, on the theory that such surveillance violated the United States and California Constitutions, and the expenditures were therefore illegal. (*Id.* at pp. 893-894; see also *Ames v. City of Hermosa Beach* (1971) 16 Cal.App.3d 146, 150-151 [rejecting argument that section 526a may not be used to enjoin the expenditure of public funds to enforce an unconstitutional penal statute].)

In other cases, plaintiffs have stated claims under section 526a for expenditures that were allegedly illegal because they violated a city charter or other statutory or municipal codes governing particular types of expenditures (*Harman v. City and County of San Francisco* (1972) 7 Cal.3d 150 [alleged violation of city charter provisions requiring city to obtain 90 percent market value for properties sold]; *Terry v. Bender* (1956) 143 Cal.App.2d 198, 204 [charter provision prohibiting city officials from having an interest in certain contracts involving the city; payment of a bribe to mayor with respect to city contract violated charter and was illegal payment under section 526a];

23

*Crowe v. Boyle* (1920) 184 Cal. 117 [if contract was illegal and void becdause it conflicted with violation of charter provisions, taxpayers had right to prevent such illegal expenditures]; *Osburn v. Stone* (1915) 170 Cal. 480 [expenditures allegedly made without following requirements such as resolution of intention and competitive bids].)

The illegal expenditures prong of section 526a has never been interpreted as applying only to claims based on alleged violations of penal laws. We need not read *Schur* as invalidating a portion of section 526a.[6] Further we are bound to follow California Supreme Court precedent in the absence of any indication that it is no longer good law. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

## C. Conclusion

I, like the majority, remain concerned about the conditions of the elephants at the Los Angeles Zoo, given the record developed at trial regarding the history of mistreatment and the less than ideal conditions at present. But addressing these concerns must be done within the confines of California law. No matter the nature of the underlying evil sought to be remedied, *Schur* and section 3369 indicate section 526a suits may not be used to enjoin violations of penal laws. As either pled or proven, I see no other basis for the relief Leider has sought. I therefore would reverse the trial court judgment issuing injunctions premised on a violations of the Penal Code.

I therefore, respectfully, dissent.

BIGELOW, P.J.

---

[6]     Amicus curiae Animal Legal Defense Fund contends that if this court interprets section 3369 as prohibiting injunctive relief under section 526a to enforce a criminal law, such an interpretation will take away a "crucial tool" currently used to "ensure the robust enforcement of California's animal abuse statutes, in cases where the government fails to satisfy its legal obligations towards animals." Although I am sympathetic to this argument, we may not interpret statutes of broad and general application with only one particular policy purpose in mind. Regardless of the required liberal construction of section 526a, *Schur* dictates that the statute's broad reach does not extend to enjoining alleged violations of penal laws in contravention of section 3369.